

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------X
RAJ RAJARATNAM,                :
                               :
               Petitioner,     :
                               :
     -against-                 :
                               :
UNITED STATES OF AMERICA,      :
                               :
               Respondent.     :
                               :
------------------------------x

15 Civ. 5325 (LAP)

Related To:
09 Cr. 1184 (LAP)

<u>Memorandum Opinion</u>
     <u>and Order</u>

Loretta A. Preska, Senior United States District Judge:

     Before the Court is a motion to correct, vacate, and/or set
aside the sentence pursuant to Title 28, United States Code,
Section 2255, (Mot. Vacate, June 16, 2015, dkt. no. 354), and a
motion for a writ of error coram nobis to vacate, reassess, and
amend the order of forfeiture, (Mot. Writ of Error, June 16,
2015, dkt. no. 351), filed by Petitioner Raj Rajaratnam
("Petitioner" or "Rajaratnam").  The Government filed an omnibus
memorandum in opposition to both of Petitioner's motions.
(Opp., Oct. 5, 2015, dkt. no. 360).  Petitioner replied, filing
both a reply memorandum pursuant to 28 U.S.C. § 2255, (Reply
Mot. Vacate, Nov. 6, 2015, dkt. no. 365), and a reply memorandum
for a writ of error coram nobis.  (Reply Mot. Writ of Error,
Nov. 6, 2015, dkt. no. 364).  Subsequent correspondence was
filed to address <u>Salman v. United States</u>, 137 S.Ct. 420 (2016),

Case 1:15-cv-05325-LAP   Document 13   Filed 03/03/17   Page 2 of 28

a recent Supreme Court decision that is relevant to Petitioner's arguments in his § 2255 petition.  (See dkt. nos. 368-372).

For reasons that follow, Petitioner's motions are denied.

## I.  BACKGROUND

On March 8, 2011, the Petitioner's trial commenced before Judge Richard Holwell.  Petitioner was charged in a Superseding Indictment in fourteen counts.  (Superseding Indictment, Jan. 20, 2011, dkt. no. 165).  Counts One to Five charged Petitioner with conspiracies to commit securities fraud, with each conspiracy defined by the individual who allegedly passed the information to Petitioner.  (Id. at ¶¶ 1-35).  Counts Six through Fourteen charged Petitioner with substantive securities fraud in connection with some of the individual trades that were also the subjects of the conspiracy counts.  (Id. at ¶¶ 36-41). The counts included: (1) leading a multi-year conspiracy with former and current employees of Galleon, including Adam Smith, to trade based on illegal tips from multiple insiders at public companies, (Count One)(id. at ¶¶ 1-7); (2) leading a multi-year conspiracy with Roomy Khan, a former Galleon employee, and exchanging illegal tips with Khan related to multiple stocks, including Polycom Inc. ("Polycom"), Hilton Hotel Corp. ("Hilton"), and Google Inc. ("Google"), (Count Two)(id. at ¶¶ 8-14); (3) leading a multi-year conspiracy with Rajiv Goel, an Intel Corp. ("Intel") executive, and trading based on illegal

tips from Goel about Intel and Clearwire Corp.
("Clearwire"),(Counts Three, Six, Seven, & Fourteen)(id. at ¶¶
15-21, 36-37, 40-41); (4) leading a multi-year conspiracy with
Anil Kumar, a senior partner at McKinsey & Company, Inc.
("McKinsey"), and trading based on illegal tips from Kumar about
Advanced Micro Devices, Inc. ("AMD"), ATI Technologies Inc.
("ATI"), and eBay Inc. ("eBay"), (Counts Four & Thirteen)(id. at
¶¶ 22-28, 38-39); (5) conspiring with Danielle Chiesi, a
portfolio manager at another hedge fund, and exchanging illegal
tips with Chiesi relating to AMD, Akamai Technologies, Inc.
("Akamai"), and other companies, (Counts Five, Eight, Nine &
Ten)(id. at ¶¶ 29-37); and trading based on material, non-public
information he obtained from a source at PeopleSupport, (Counts
Eleven and Twelve).  (Id. at ¶¶ 36-37).

      At trial, the Government offered physical and testimonial
evidence as to Petitioner's guilt, including: (1) wiretap
recordings of Petitioner's phone conversation with Kumar, Goel,
Smith, Chiesi, and others demonstrating that Petitioner schemed
repeatedly to obtain and to trade based on inside information,
(Opp. at 4); (2) testimony from Kumar regarding his agreement to
provide Petitioner with multiple illegal tips, including tips
related to AMD's acquisition of ATI in 2006, and Petitioner's
elaborate schemes to conceal the bribes he paid to Kumar for
those tips, (id.); (3) testimony from Goel regarding his

agreement to provide Petitioner with multiple illegal tips relating to Intel's April 2007 earnings and Intel's 2008 investment in Clearwire, (id.); (4) testimony from Smith regarding his agreement to share inside information with individuals at Galleon including Petitioner and Petitioner's directives to conceal their crimes, (id.); (5) testimony from various executives at public companies and other firms relating to the confidentiality of the information Petitioner obtained from many sources, (id.); and (6) summary charts reflecting Petitioner's phone calls with sources of inside information and the extensive trading by Petitioner and others based on that information. (Id.)

On May 11, 2011, the jury found Petitioner guilty on all fourteen counts. (Rajaratnam Trial Tr., May 11, 2011, at 5712-13). On October 13, 2011, Judge Holwell sentenced Petitioner to a term of 132 months imprisonment, to be followed by two years of supervised release. (Judgment, Oct. 25, 2011, dkt. no. 328). Judge Holwell also ordered Petitioner to pay a fine of $10 million, a $1,400 special assessment, and forfeiture in the amount of $53,816,434. (Id.)

On appeal, Petitioner advanced two arguments: first, Petitioner argued that the wiretaps capturing his illegal schemes should have been suppressed because the Government included material falsehoods or omissions in the relevant

4

applications.  (Appeal Br. at 33, 11-4416, dkt. no. 75).

Second, Petitioner challenged Judge Holwell's instruction to the

jury that it could convict Rajaratnam if the inside information

was "a factor, however small," in his trading decisions.  (Id.

at 56).  Petitioner concedes that appellate counsel "did not

challenge the trial court's instruction on 'knowledge' and

'benefit' or the sufficiency of the evidence of 'knowledge' or

'benefit.'"  (Mot. Vacate at 12).  The Court of Appeals affirmed

Rajaratnam's convictions by opinion dated June 24, 2013.  United

States v. Rajaratnam, 719 F.3d 139 (2d Cir. 2013).

## II. Discussion

### A.   § 2255 Habeas Petition

#### i. Legal Standard

It is well settled that a § 2255 petition is not a

substitute for a direct appeal.  United States v. Frady, 456

U.S. 152, 165 (1982); United States v. Vilar, 645 F.3d 543, 548

(2d Cir. 2011).  A federal prisoner cannot use a § 2255 petition

to litigate questions that could have been raised on direct

appeal but were not.  Sapia v. United States, 433 F.3d 212, 217

(2d Cir. 2005).  Society's interest in repose of criminal

judgments animates these procedural rules and compels their

vigorous enforcement.  See, e.g., Harrington v. Richter, 562

U.S. 86, 103 (2011)(discussing repose in the context of

petitions for habeas corpus from state prisoners).  Thus, where

a petitioner has procedurally defaulted a claim by failing to raise it at a trial, sentencing, or on direct appeal, the claim may be raised through § 2255 only if petitioner "can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998)(internal quotations and citations omitted).

The Supreme Court has instructed that "cause" should be construed narrowly. See Coleman v. Thompson, 501 U.S. 722, 752 (1991)(noting that "cause" arises only when it is "something external to the petitioner" which "cannot be fairly attributed to him"). Where a petitioner argues that the "cause" for the procedural default was a result of ineffective assistance of counsel, the petitioner must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); United States v. Whitman, 115 F.Supp.3d 439, 445 (S.D.N.Y. 2015). Ineffective assistance of counsel claims include both the "cause" and "prejudice" prongs because the Strickland standard also requires a showing of prejudice.

Habeas courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." Strickland, 466 U.S. at 689.  In reviewing allegations of deficient performance by appellate counsel, reviewing courts are instructed not to "second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every colorable claim" on appeal.  Jones v. Barnes, 463 U.S. 745, 754 (1983)(internal quotation omitted). When analyzing the objective reasonableness of counsel's performance, such performance "must be assessed in light of the information known at the time of the decisions, not in hindsight." Strickland, 466 U.S. at 680.  Additionally, in attempting to demonstrate constitutional ineffectiveness by appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  Instead, a habeas petitioner must establish that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  Id.  "Strategic choices" made by appellate counsel "after thorough investigation of law and facts relevant to plausible options" are "virtually unchallengeable." Strickland, 466 U.S. at 690-91.

In the event a petitioner cannot demonstrate "cause" for his procedural default, he or she can obtain review for his or

her claim by showing "that a fundamental miscarriage of justice would result from a failure to entertain the claim." McCleskey v. Zant, 499 U.S. 467, 494-95 (1991).  The Supreme Court has repeatedly emphasized that a "fundamental miscarriage of justice" results only when petitioner can establish "actual innocence."  See Herrera v. Collins, 506 U.S. 390, 404 (1993)(referring to rule requiring "proper showing of actual innocence" as the "fundamental miscarriage of justice exception" and explaining the purpose of the exception is "to see that federal constitutional errors do not result in the incarceration of innocent persons").

Furthermore, "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. Accordingly, this narrow test is satisfied only when petitioner can demonstrate that his acts "have been ruled not to constitute criminal conduct." Underwood v. United States, 166 F.3d 84, 88 (2d Cir. 1999).

### ii. Discussion

#### a. Ineffective Assistance of Counsel

Here, Petitioner cannot demonstrate ineffective assistance of counsel because there were no "objective factor[s] external" to the defendant that would have prevented him from raising his claims on direct appeal.  See Coleman, 501 U.S. at 752 (noting that "'cause' under the cause and prejudice test must be

something *external* to the petitioner")(emphasis in original). Further, Petitioner fails to show that he has suffered prejudice as a result of counsel's alleged error.

Petitioner argues that the jury instructions omitted the requirement that "the government must prove a remote tippee's knowledge of the benefit received by the insider, and that the benefit be more than the mere satisfaction of friendship." (Mot. Vacate at 26).  Petitioner notes that trial counsel recognized the importance of the Government's burden to prove both "knowledge" and "benefit" as they submitted draft jury charges containing these requirements.  (Id.)  However, Petitioner contends that it was "objectively unreasonable" for trial counsel to abandon this issue in the jury charge, thereby failing to describe accurately the Government's burden, as was appellate counsel's failure to raise this issue on appeal.  See id. ("[C]ounsel anticipated Newman . . . however, counsel failed to object to the charge as read" and "failed to object on direct appeal.").

The Court is unpersuaded.  Counsel need not advance every non-frivolous argument in order to perform at an objective standard of reasonableness.  See Mayo, 13 F.3d at 533.  The record demonstrates that Petitioner's appellate counsel did advance several reasonable arguments and exercised reasonable judgment when doing so.  The Court finds that the decision to

advance the arguments that (1) the wiretap evidence should be suppressed and that (2) the jury was mistakenly instructed that they could convict if the inside information was "a factor, however small", (Appeal Br. at 33, 56, 11-4416, dkt. no. 75), was not unreasonable.  The Petitioner advances no argument that these claims were any less significant or weaker than the claim that the jury instructions contained an error regarding personal benefit or knowledge.  See Mayo, 13 F.3d at 533 (requiring a showing that ignored issues are clearly stronger than those presented to overcome presumption of effective counsel). Moreover, Petitioner does not show how "his appellate counsel's choice not to appeal the Court's instruction on personal benefit fell below an objective standard of reasonableness." See Whitman, 115 F.Supp. at 445 (denying § 2255 motion raising Newman claims when there is no showing by Petitioner as to why it was "objectively unreasonable" for counsel to raise certain claims but not others on appeal).  Accordingly, the Petitioner has failed to overcome the strong presumption of effective assistance by counsel.

Further, even if Petitioner had sufficiently demonstrated that counsel's representation fell below an objective standard of reasonableness, Petitioner has not shown that he suffered prejudice because of counsel's failure to raise this issue. Petitioner must show that "there is a reasonable probability

10

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  However, had Petitioner's counsel appealed Judge Holwell's jury instructions for failing to provide different instructions regarding knowledge of benefit, and had the Court of Appeals decided that knowledge of benefit was required to convict, that decision would not have resulted in a reversal of the challenged counts.  Substantial evidence was introduced at trial showing that the Petitioner knew that insiders were receiving a benefit in exchange for confidential information.  (See Opp. at 7-10, 24-25, 28-29, 30-32; see also, infra at 14-17).  The Court therefore finds that any error in the jury instructions was harmless because such an error would not have had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Neder v. United States, 527 U.S. 1, 18-20 (1999). Accordingly, Petitioner did not suffer prejudice as a result of counsel's alleged error.

Thus, Petitioner's claim on the basis of ineffective assistance of counsel is denied.

### b. Actual Innocence

Petitioner's argument on the basis of the actual innocence standard also fails.  Petitioner challenges his convictions on Counts Two, Five, Eight, Nine, Ten, and the ICST trade

underlying Count One--namely, the Counts in which he did not personally provide benefits to insiders--on the grounds that "there is no evidence [Petitioner] knew that he received information provided by corporate insiders in exchange for a benefit, as Newman defined it." (Mot. Vacate at 25).

As an initial matter, the Supreme Court recently revisited the issue of what constitutes the requisite benefit in insider trading in Salman v. United States, holding that a benefit does not need to be pecuniary in nature but rather that a sufficient benefit is conferred when "an insider makes a gift of confidential information to a trading relative or friend." 137 S.Ct. at 427. Here, because all the information was transferred between trading relatives or friends, the mere transfer of information is sufficient to constitute a benefit. Accordingly, even if pecuniary benefits were not provided to the tippers, the record still demonstrates that a sufficient benefit was provided to each of the insiders in exchange for his or her provision of confidential information. Therefore, Petitioner must demonstrate that he did not have the requisite knowledge in order to prevail on his claim of actual innocence.

In Unites States v. Newman, the Court held that to satisfy the knowledge element in an insider trading case the tippee must know that the insider disclosed confidential information in exchange for personal benefit. 773 F.3d 438 (2d Cir. 2014). In

12

Newman, the defendants Todd Newman and Anthony Chiasson were
charged with securities fraud for executing trades in Dell and
NVIDIA stock and ultimately receiving profits of $4 million and
$68 million for their respective funds.  Id. at 443.  Both
individuals did not receive information directly from the
corporate insider but rather were several steps removed from the
corporate insiders.  Id.  With respect to the Dell tipping
chain, Rob Ray, a member of Dell's investor relations department
and the corporate insider in this tipping chain, tipped Sandy
Goyal, who in turn provided this information to Jesse Tortora,
who in turn provided this information to Newman as well as to
Spyridon Adondakis, who in turn provided this information to
Chiasson.  Id.  As such, in the Dell chain, Newman was three
levels removed from the insider, and Chiasson was four levels
removed.  Id.  With respect to the NVIDIA tipping chain, the
evidence established that the insider, Chris Choi, a member of
NVIDIA's finance unit, tipped Hyung Lim, who in turn tipped
Danny Kuo, who circulated this information to Tortora and
Adondakis, who in turn gave this information to Newman and
Chiasson.  Id.  As such, both individual were four levels
removed from the insider in this tipping chain.  Id.  Because
there was no evidence that either Newman or Chiasson was aware
that he or she was trading on information obtained from insiders
or that the insiders received a benefit in exchange for the

disclosures, the Court of Appeals reversed their convictions. Id. at 453.

Here, Petitioner was situated very differently from either Newman or Chiasson because he either directly provided the benefit or was one level removed from the individual who provided the benefit.  Moreover, in the instances where Petitioner was one level removed from the insider, he either knew where the information was originating from or was providing a benefit to the intermediate tippees.  The Court therefore finds that unlike Newman, where knowledge could not be inferred given the distance between the defendants and the insiders, here a reasonable jury could infer that Petitioner did have knowledge that the insiders disclosed confidential information in exchange for a benefit.

Specifically, as to Count Two, Petitioner received information from Khan in 2006 and 2007.  (Superseding Indictment at ¶¶ 8-12).  Khan had received this inside information from Bhalla, a Polycom executive, Deep Shah, a Moody's analyst, and Hussain, a marketing firm analyst for Google.  (Opp. at 24).  In July 2007, Khan told Petitioner that he had learned from an insider that Google was going to announce unexpectedly poor financials.  (Id.)  Petitioner traded on this information and earned millions in profits when Google announced its second quarter profits.  (Id.)  That same day, a FedEx envelope was

sent from Khan's work address, using Khan's FedEx account, to
Hussain.  (Id. at 24-25).  Additionally, with respect to these
chains, Petitioner provided Khan with a benefit in the form of
material non-public information.  (Id. at 25-26).  This benefit
provided by Petitioner to Khan, the intermediate tippee,
provides further evidence that Petitioner understood that this
sort of confidential information is not provided to individuals
without exchange of some benefit.  Therefore, although
Petitioner may not have known of the specific benefits that Khan
provided to the inside tipper, the jury had sufficient evidence
reasonably to infer that Petitioner knew that inside information
was being provided in exchange for a personal benefit.
Accordingly, Petitioner cannot prove actual innocence, which
requires a showing of factual innocence, not "mere legal
insufficiency." Bousley, 523 U.S. at 623.

Count Five includes both the Chiesi conspiracy as well as
Petitioner's direct receipt of information from Kumar related to
AMD.  (Superseding Indictment at ¶ 31).  Petitioner directly
provided a benefit to Kumar.  (See Opp. at 4-5)(Petitioner
"wired money to Kumar's offshore account . . . .  In return,
Kumar repeatedly provided [Petitioner] with confidential
information.").  Accordingly, Petitioner had knowledge of inside
information being provided in exchange for a personal benefit

with respect to this Count and cannot establish actual
innocence.

   With respect to Counts Five, Eight, Nine, and Ten, the
Government presented evidence that Chiesi provided benefits to
Kieran Taylor, who in exchange gave inside information to
Chiesi.  As explained above, providing information to a trading
relative or friend is sufficient to constitute a personal
benefit.  See Salman, 137 S.Ct. at 427.  Petitioner concedes in
his motion that he knew Taylor had provided this information to
Chiesi because of their close friendship.  (Mot. Vacate at 22,
"the clear implication was [Taylor] had provided that
information merely out of friendship.")  Accordingly, he cannot
now claim that he did not have the requisite knowledge that
confidential information was being provided by an insider in
exchange for a personal benefit.

   With respect to the ICST trade underlying Count One,
Petitioner also fails to prove actual innocence.  Petitioner
received information from Smith, a Galleon employee, who was
receiving information from Kamal Ahmed, a former colleague of
Smith's at Morgan Stanley.  (Opp. at 30).  Ahmed told Smith that
a company was in the process of acquiring ICST.  (Id.)  Smith
then passed this information to Petitioner and informed
Petitioner that it came from Ahmed.  (Id. at 30-31).  The use of
coded language between Smith and Petitioner when discussing this

deal makes it clear that they knew this information was non-public and should not have been disclosed to them.  (Id. at 31).
Conferral of a personal benefit in exchange for this inside
information is evident because Smith provided Ahmed with
thoughts about the marketplace and stocks, introduced Ahmed to
individuals he requested, and recommended him to executives at
technology companies.  (Id. at 31-32).  Moreover, the mere
provision of inside information from Ahmed to Smith was
sufficient to establish the requisite personal benefit given the
nature of their close relationship.  See Salman, 137 S.Ct. at
427.  Because Petitioner had knowledge of the exchange of non-public information between Smith and Ahmed, Petitioner cannot
establish actual innocence with respect to this trade either.

Because there was an exchange of personal benefit on each
of these trades, and because Petitioner had knowledge that
inside information was being conferred in exchange for such
benefit, the Court denies Petitioner's claim of actual innocence
on all of the foregoing counts.

## B. Vacatur for Perjured Testimony

### i. Legal Standard

"[A] petitioner is not entitled to a new trial based on a
claim of perjury, unless he 'first demonstrate[s] that the
witness in fact committed perjury.'"  United States v. Reeves,
Nos. 02 Civ. 9309 (LAP) & 96 Cr. 325 (LAP), 2005 WL 3288012, at

*9 (S.D.N.Y. Dec 2, 2005)(quoting United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001)).  The movant bears the burden to prove perjury by a preponderance of the evidence.  United States v. Sessa, Nos. 92-CR-351(ARR) & 97-CV-2079(ARR), 2011 WL 256330, at *44 (E.D.N.Y. Jan. 25, 2011).  "Simple inaccuracies or inconsistencies" arising from "confusion, mistake, or faulty memory . . . do not rise to the level of perjury." Id.  "[E]ven a direct conflict in testimony does not in itself constitute perjury." United States v. Gambino, 59 F.3d 353, 365 (2d Cir. 1995).  Rather, a witness perjures himself by adducing "false testimony concerning a material matter with the willful intent to provide false testimony." Monteleone, 257 F.3d at 219.

    "[A] new trial is not foreordained" whenever a petitioner satisfies his initial burden.  Id.  Instead, in evaluating whether perjurious testimony warrants a new trial, courts in this circuit apply two, discrete standards of review set forth in United States v. Wallach, 935 F.2d. 445 (2d Cir. 1991). "Where the prosecution knew or should have known of the perjury, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's judgment." Id. at 456.  However, "[w]here the government was unaware of a witness'[s] perjury . . . a new trial is warranted only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the

defendant would most likely not have been convicted." Id.  The test for determining the materiality of the testimony is "whether there was a significant chance that this added item, developed by skilled counsel . . . could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." United States v. Seijo, 514 F.2d 1357, 1364 (2d Cir. 1975) (citations omitted).

In the alternative, a Court must hold a hearing pursuant to Section 2255 "unless the motion . . . conclusively show[s] that the prisoner is entitled to no relief."  28 U.S.C. §2255(b). The Court of Appeals has instructed that "to prevail on his motion for a hearing [Petitioner] must establish that he has a 'plausible' claim." Armienti v. United States, 234 F.3d 820 (2d Cir. 2000).  Further, "[a]n evidentiary hearing is necessary only when petitioner establishes a 'plausible claim' of perjury--one not plainly disproved by the totality of evidence and that, if true, would entitle him to collateral relief." Brandon v. United States, No. 09 Civ. 7720 (JGK), 2011 WL 4801362, at *3 (S.D.N.Y. Oct. 11, 2011)(quoting Florez v. United States, No. 07 Civ. 4965, 2009 WL 2228121, at *11 (E.D.N.Y. July 24, 2009)).

### ii. Discussion

Petitioner argues that Counts Four and Thirteen, which concern Petitioner's trading securities based on inside information related to AMD, ATI, and eBay, should be vacated

because Kumar perjured himself at trial.  (Mot. Vacate at 27).

However, Petitioner has failed to meet his initial burden to

show that Kumar's testimony rose to the level of perjury, see

Reeves, 2005 WL 3288012, at *9, or that the allegedly false

testimony concerned a "material matter." Monteleone, 257 F.3d at

219.

Prior to testifying as a witness at Petitioner's trial,

Kumar met with the Government to prepare for his testimony.

(Opp. at 36).  However, more than three years later, Kumar

refused to be prepared by the Government in advance of

testifying at Rengan Rajaratnam's trial regarding similar

conduct.  Id.  It is not surprising to the Court that, years

later, without having his recollection refreshed with documents

and recordings immediately prior to trial, Kumar's memory

faltered and his testimony differed in certain respects

concerning events that occurred nearly a decade prior.  However,

a faulty memory resulting in inaccuracies or mistakes does not

prove that Kumar provided false testimony with the intent to

provide false testimony during Petitioner's trial. See Sessa,

2011 WL 256330, at *44 (noting that mere inaccuracies do not

rise to the level of perjury); Monteleone, 257 F.3d at 219.

Accordingly, Petitioner has failed to show that Kumar committed

perjury.

The Court is further persuaded that Petitioner did not meet his initial burden of showing perjury because the allegedly contradictory testimony did not concern matters material to Petitioner's conviction on Counts Four and Thirteen.  See Monteleone, 257 F.3d at 219.  Petitioner points out several inconsistent statements made by Kumar between Petitioner's trial and his brother Rengan's trial.  (See Reply Mot. Vacate at 19).  For example, Petitioner notes that Kumar testified that McKinsey did not allow consulting agreements during Petitioner's trial but testified that McKinsey did allow consulting agreements during Rengan's trial.  (Compare Rajaratnam Trial Tr., Mar. 10, 2011, at 264-65 with Rengan Trial Tr., June 26, 2014, at 822, 927).  Petitioner also notes that Kumar's testimony differed as to why Kumar started tipping Petitioner: at Petitioner's trial, Kumar testified that the reason was because Petitioner was pressing him for information, whereas at Rengan's trial Kumar testified that he did so because he wanted Petitioner to support AMD and was eager to have Galleon become a client of McKinsey.  (Compare Rajaratnam Trial Tr. at 279, 288-89 with Rengan Trial Tr., at 844, 956-57).  Additional examples of Kumar's allegedly inconsistent statements include his testimony regarding Rengan's involvement in the conspiracy and Rengan's attempts to lure another one of Kumar's colleagues into the conspiracy. (See Reply Mot. Vacate at 19).  It is apparent to the Court, however,

that none of these statements is relevant to the basis of Petitioner's conviction on Counts Four and Thirteen, which relate to Petitioner's trading in securities of AMD, ATI, and eBay based on inside information.  Indeed, the Court also notes that Judge Buchwald made remarks during Rengan's trial that at least some of Kumar's statements were not inconsistent with his previous testimony.  (See Rengan Trial Tr. at 889-92, 1039-44).

Even the most serious of the allegedly contradictory statements identified by Petitioner--namely, that Kumar switched his testimony regarding the public/private nature of the AMD/Mubadala merger--are not material because Counts Four and Thirteen do not relate to that deal exclusively.  (See Superseding Indictment at ¶¶ 24 and 39).  Because Petitioner has not demonstrated that the allegedly inconsistent statements were material, the Court finds that he has failed to meet his initial burden to show perjury for this reason as well.

In addition, the Court notes that at Petitioner's trial there was substantial testimony--not later contradicted--that provided adequate grounds for a jury to convict on Counts Four and Thirteen.  Kumar testified at length stating that he provided Petitioner with confidential information related to the ATI/AMD merger that Petitioner ultimately traded on and profited from substantially.  (See Rajaratnam Trial Tr. at 350, 354-56, 366-67, 387).  This testimony alone would provide sufficient

grounds for jurors to find Petitioner guilty on Counts Four and
Thirteen.  These Counts, in part, allege that "Kumar spoke to
[Petitioner] by telephone about AMD's planned acquisition of
ATI," (id. ¶ 29), and that "[Petitioner] caused Galleon . . . to
execute transactions in the securities of ATI on the basis of
material, nonpublic information," (id. ¶ 39).  At no time did
Kumar testify inconsistently about the ATI acquisitions; in
fact, he reaffirmed during Rengan's trial that he provided
Petitioner with confidential information relating to AMD.
(Rengan Trial Tr. at 934-35).  Kumar's consistency regarding
conduct that directly relates to the basis of Petitioner's
convictions on Counts Four and Thirteen further persuades the
Court that Kumar did not commit perjury at Petitioner's trial.

Because Petitioner has failed to meet his initial burden
that the witness in fact committed perjury, the Court need not
address the discrete Wallach standards of review and finds that
the Petitioner is not entitled to a new trial.  However, the
Court also notes that Petitioner has failed to demonstrate that
the Government knew or should have known about Kumar's alleged
perjury.  See Wallach, 935 F.2d. at 456.  Accordingly,
Petitioner would again be required to make a showing of
materiality, which, as noted above, Petitioner has failed to do.

Petitioner also argues that his conviction on Counts Four
and Thirteen should be reversed on the grounds that had the

contradictory portions of Kumar's testimony been available for impeachment purposes at the trial, the jury most likely would have found that Kumar lacked credibility and declined to convict.  (Mot. Vacate at 42-43).  "Upon discovery of previous trial perjury by a government witness, the court should decide whether the jury probably would have altered its verdict if it had had the opportunity to appraise the impact of the newly-discovered evidence not only upon the factual elements of the government's case but also upon the credibility of the government's witness."  United States v. Stofsky, 527 F.2d 237, 246 (2d Cir. 1975).  As explained above, the Court is unpersuaded that Kumar's inconsistent testimony constitutes perjury.  Even assuming arguendo that Kumar did commit perjury at Petitioner's trial, it appears unlikely to the Court that the jury would have altered its verdict because Kumar's testimony at both trials implicated Petitioner in a criminal scheme and a conspiracy to trade securities on the basis of inside information in a substantially consistent manner.  Accordingly, although as an initial matter it is the Court's finding that Kumar did not commit perjury at Kumar's trial, the unlikeliness that the jury would have altered its verdict if Kumar's credibility had been impeached further persuades the Court to deny Petitioner's request for a new trial.

Petitioner also requests a hearing to determine whether Kumar perjured himself at trial. (Mot. Vacate at 44-45). To be entitled to a hearing, Petitioner must establish a plausible claim of perjury. See Brandon, 2011 WL 4801362, at *3. Years after his initial testimony, and after not having reviewed any documents relating to events that happened almost a decade prior, Kumar gave partially inconsistent testimony regarding conduct immaterial to the basis of Petitioner's conviction. (See supra at 20-22). Furthermore, Kumar repeatedly reaffirmed that he engaged in insider trading with Petitioner, that he provided Petitioner with confidential information and in return received a benefit from Petitioner, all of which is corroborated by other evidence presented by the Government, including wire-tapped conversations, trading records, and account statements. (Opp. at 35). Accordingly, the Court finds that Petitioner's perjury claim is not plausible and that a hearing pursuant to Section 2255 is not warranted.

Petioner's request for vacatur of Counts Four and Thirteen is denied.

### C. Writ or Error Coram Nobis

#### i. Legal Standard

"The writ of error coram nobis is an extraordinary writ; and an extraordinary remedy [that] should not be granted in the ordinary case." United States v. Denedo, 556 U.S. 904, 917

(2009)(internal quotation marks and ellipsis omitted).  This writ "can relieve an individual of the continuing noncustodial effects of a criminal conviction." Kaminski v. United States, 339 F.3d 84, 90 (2d Cir. 2003).  However, "judgment finality is not to be lightly cast aside," and courts must be cautious so that this extreme remedy is only granted in extreme cases. United States v. Denedo, 556 U.S. at 916.  "Coram nobis is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotations and ellipsis omitted).

"The proceedings leading to the petitioner's conviction are presumed to be correct, and 'the burden rests on the accused to show otherwise.'" Foont, 93 F.3d at 78-79 (quoting United States v. Morgan, 436 U.S. 502, 512 (1954)).  To obtain relief, a petitioner must demonstrate that (1) "there are circumstances compelling such action to achieve justice," (2) "sound reasons exist for failure to seek appropriate earlier relief," and (3) petitioner "continues to suffer legal consequences from his conviction that may be remedied by granting the writ." Id. at 79. (quotation marks and alteration omitted).

### ii. Discussion

Citing Newman and United States v. Contorinis, 692 F.3d 136 (2d Cir. 2015), Petitioner contends that his $53.8 million agreed-upon forfeiture order should be reduced by nearly $50 million. (Mot. Writ of Error at 1). However, for reasons described above, Petitioner's reliance on Newman is unavailing because he cannot establish actual innocence. (See supra at 11-17). Because Petitioner has failed to show that one of the three criteria necessary to grant this writ--namely, "circumstances compelling such action to achieve justice," Foont, 93 F.3d at 79--the Court rejects Petitioner's claim to exclude from the forfeiture those gains that were allegedly not unlawful under Newman. (Mot. Writ of Error at 3).

Further, Petitioner argues that the forfeiture is invalid under Contorinis because it exceeds the scope of the forfeiture statute, 18 U.S.C. § 981(A)(1)(C), because the forfeiture order must be limited to defendant's own gains and Petitioner never "received or possessed" the fees. (Mot. Writ of Error at 10-11). However, when Petitioner negotiated and agreed to the forfeiture order, he failed to raise this issue on direct appeal even though the Contorinis decision was available to him at that time. The Court therefore cannot find that the forfeiture order was an "error[] of the most fundamental character," Foreman v. United States, 247 Fed. Appx. 246, 248 (2d Cir. 2007), or that

"sound reasons exist for failure to seek appropriate earlier relief," Foont, 93 F.3d at 79.  Additionally, unlike in Contorinis, where the defendant was merely a portfolio manager of the fund and consequently did not have control over the funds, 692 F.3d at 139, here Petitioner was the founder and manager of Galleon and did in fact acquire and have control over the funds, (Mot. Writ of Error at 4).  Thus, there is no basis to reduce the agreed-upon forfeiture order under Contorinis.

Petitioner's writ of error coram nobis is denied.

## III.  CONCLUSION

For the foregoing reasons, the Court resolves the various outstanding motions and requests in the following manner:

1. The motion to correct, vacate, and/or set aside his sentence pursuant to Title 28, United States Code, Section 2255 [dkt. no. 354] and the request for oral argument [dkt. no. 366] are denied.

2. The writ of error coram nobis to vacate, reassess, and amend his order of forfeiture [dkt. no. 351] and the request for oral argument [dkt. no. 367] are denied.

SO ORDERED.

Dated:     New York, New York
           March 3, 2017

                              _____
                              LORETTA A. PRESKA
                              Senior United States District Judge